(52 South. 669.)

No. 17,950.

Succession of HANNA.

(June 6, 1910. On Application for Rehearing, June 28, 1910.)

*(Syllabus by the Court.)*

HUSBAND AND WIFE (§ 276*) — COMMUNITY PROPERTY — SURVIVING HUSBAND — COLLATION OF ADVANCES.

The surviving husband in community administering the intestate succession of the deceased wife, and claiming the legal usufruct of her interest in the community property, cannot demand of one of the children of the marriage a collation of advances made to him during the existence of the community, nor can such administrator provoke a settlement of accounts between the children of the marriage by charging some of them with advances received during the life of the wife and mother. Such an accounting can be had only in partition proceedings between the forced heirs of the wife.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 276.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

In the matter of the succession of Elizabeth Hanna, née Spires. To the homologation of the account of the administrator, Ida Driscoll filed an opposition and appeals. Accounting amended, and judgment reversed to conform to decree.

Dinkelspiel, Hart & Davey, for appellant. E. A. O'Sullivan, for appellee.

LAND, J. Mrs. Elizabeth Hanna, wife of John H. Hanna, died in December, 1901. Her succession was not opened, but the surviving husband, with the consent of the six children of the marriage, retained possession of all the community property as surviving husband and usufructuary. All the heirs of the deceased wife were of age. The value of the community property approximated $400,000. On May 30, 1905, John H. Hanna made affidavit before a notary public, reciting his marriage, the birth of his six children, the death of his wife, the subsequent death of one of his married daughters, leaving a minor son, who had been afterwards duly emancipated by judgment of the court, and that at the date of the death of the wife certain stocks standing in his name were community property, the naked ownership of one-half of which became vested in his six children, affiant having the usufruct thereof, to wit: (Here follows a list of stocks in sundry banks and other corporations, including) "336 shares St. Charles R. R. Co. (since liquidated)." On the same day the six heirs appeared before the same notary and executed a general and special power of attorney appointing their father as their agent, empowering him among other things to sell and transfer, manage, control, and dispose of all or any shares of stock owned by them.

In November, 1908, Charles H. Hanna, one of the sons, died leaving as his sole heir

Cleo Hanna, a minor of six years, represented by his mother, Mrs. Ida Kuntz, as tutrix.

In February, 1909, John H. Hanna filed a petition praying to be appointed administrator of his wife's succession, basing his application on the allegation that said minor was interested in the estate of the decedent. An inventory was taken, and the applicant was duly appointed and qualified as administrator, without opposition from any of the heirs. The inventory showed community property appraised at $393,651.67, inclusive of real estate valued at $15,000. On the fourth day after his appointment the administrator filed an account, showing community assets as per inventory, and charging himself wih one-half of the total appraisement, $196,825.83½. Per contra, the administrator claimed credit for expenses of last illness, funeral charges, commissions, law charges, etc., leaving a balance of $177,651.67 to the credit of the estate which the accountant retains as usufructuary. The accountant then proceeds to state that each of the six heirs inherit $29,608.61, and that Charles H. Hanna had received $15,477.17, one-half of which, or $7,738.58, must be deducted from the share of the minor heir, leaving a balance of $21,870.03 inherited by said minor.

The mother of the minor, as tutrix, and as executrix of her husband's estate, opposed the homologation of the account on various grounds, among others that a large portion of the assets of the community had been omitted from the inventory; that the debit items were not due and owing; that some were prescribed, and others not chargeable to the succession; that no advances as charges were made to Charles A. Hanna, deceased; that the other children had received large advances from the mother's estate which should be charged to them; that in attempting to administer upon this succession John H. Hanna has waived his rights as usufructuary, and should be ordered to liquidate and settle without further delay, wherefore the opponent prayed that her opposition be sustained in each of the particulars set forth, and the account be amended as to assets and liabilities accordingly.

The cause was tried, and judgment was rendered, settling the collations due by the minor and by two of the other heirs, fixing the balances due to them, respectively, by John H. Hanna, correcting the account in a few unimportant particulars, and recognizing John H. Hanna as the surviving spouse of the late Mrs. Elizabeth Spires, and that as such he have the usufruct of the residuum amounting to $196,825.83. The opponent has appealed.

In this court the opponent contends, first, that of the 336 shares of St. Charles Street Railroad Company only 168 shares were placed on the inventory. While this apparent contradiction is not explained in the testimony of Mr. John H. Hanna, it appears on the face of the papers that the stock inventoried is preferred stock, while the stock in the affidavit is described as 336 shares "(since liquidated)." It is reasonable to presume that the ordinary stock was converted into preferred stock. No attempt was made to impeach the testimony of Mr. Hanna that the 168 shares represented all of the stock of that kind owned by the community at the date of the death of his wife. If the statement of Mr. Hanna was not substantially true, it may be presumed that he would have been confronted with the stock book of the railroad corporation.

The second complaint is as to the valuation of the furniture which was regularly inventoried and appraised. The furniture was old, and the mere fact that Mr. Hanna had carried insurance for $9,000 on the contents of his house both before and after the death of his wife does not suffice to prove that the furniture in question was not prop-

erly appraised. Mr. Hanna was not accounting as usufructuary, but as administrator.

The third complaint, which is well founded, is that the administrator was not charged with office furniture appraised at $10 on the inventory.

The last complaint relates to advances and collations charged against the minor.

The succession of the wife owed no debts or charges that could not have been paid at once out of the cash on hand, and all the heirs were majors. There was no necessity for an administration, and as a matter of fact the surviving husband retained the possession and management of all the community property as owner and usufructuary with the consent of all the heirs, who gave him full power to dispose of their respective interests in the property. But, as the appointment of administrator was made after due notice and without opposition, the capacity of the administrator to act as such cannot be collaterally attacked. Considered as administrator, it goes without saying that the accountant is without power to compel the heirs to collate or to account for advances made to them by the decedent. These are matters that can be properly considered only in partition proceedings between the heirs of the wife. Collation is demandable only among forced heirs. It cannot be demanded by any other kind of heir or legatees or creditors of the succession. Civ. Code, arts. 1235, 1236; Succession of Ball, 42 La. Ann. 204, 7 South. 567. Collation is an incident to a partition among forced heirs, and a partition cannot be had until the administration is closed and the heirs sent into possession.

It follows that all that portion of the account relating to advances to the minor and the proportionate share of each heir should be stricken out. The only questions properly before the court are what assets have been received by the administrator, and what are the lawful debts of the succession paid and to be paid. The inventory correctly represents the assets. In appellant's brief we find no complaint as to the allowance of the debts and charges appearing on the account. The residuum will remain in the hands of John H. Hanna as usufructuary, to be accounted for at the termination of the usufruct.

It is therefore ordered that the account filed by John H. Hanna as administrator be amended by adding to the total assets the sum of $10 for office movables, and by making the necessary corrections to correspond with said increase of assets, and by striking out all that portion of said account following the word "Balance," and the figures "$177,651.67," on the same line; and it is further ordered that as thus amended said account be approved, homologated, and made the judgment of the court, and that the administrator pay the debts and charges as set forth in said account, and upon producing proper vouchers and receipts therefor that he be discharged from his trust and his bond canceled; and it is further ordered and decreed that the said John H. Hanna be recognized as the surviving husband in community of Mrs. Elizabeth Hanna, deceased, and as such entitled to the legal usufruct of her interest in all the property belonging to the community at the date of her death. It is further ordered that the opposition be maintained to the extent above set forth, and that the costs of the opposition be paid by the succession, and, finally, that the judgment below be amended and reversed so as to conform to this decree.

### On Application for Rehearing.

PER CURIAM. By reason of the written agreement and consent of all the parties to this appeal, filed June 20, 1910, it is ordered that a rehearing be granted; and that

the decree herein rendered on June 6, 1910, be set aside, and that this appeal be dismissed at the cost of the appellants.